1

2

3

4

5

6                              IN THE UNITED STATES DISTRICT COURT

7                              FOR THE DISTRICT OF ARIZONA

8

9   Mary Elizabeth Albert,                    )    No. CV 08-267-TUC-FRZ (CRP)
                                              )
10           Plaintiff,                        )    **REPORT AND RECOMMENDATION**
                                              )
11  vs.                                        )
                                              )
12  Michael J. Astrue, Commissioner            )
    of  Social Security,                       )
13                                             )
             Defendant.                        )
14                                             )
    _____       )
15

16

17        Plaintiff Mary Albert worked with some regularity from the early eighties through

18  2002.  (AR at 200-201).  As a graphic artist Plaintiff earned a solid income from 1992

19  through 2002, with a high of $29,354 in 2000.  (AR at 201).  Subsequently, Plaintiff's

20  income began to drop as she was fired from multiple jobs for making too many mistakes.

21  (AR at 112-115, 201).  After being fired from her last graphic artist job in May 2004,

22  Plaintiff sought help from a vocational rehabilitation clinic at the University of Arizona.

23  (AR at 355, 377).  Plaintiff was tested and counseled and the clinic and eventually hired as a

24  sales person at a local bead store.  Plaintiff was fired from that job three or four months later

25  because of her poor performance and tearful mood.  (AR at 128).

26        Plaintiff applied for disability insurance benefits and supplemental security income

27  on December 20, 2004, claiming to be disabled since May 28, 2004.  (Administrative

28  Record "AR" at 9, 208).  The application was denied.  (AR at 135-139).  A hearing before an

Administrative Law Judge ("ALJ") was held on March 5, 2007.  (AR at 103-134).  The ALJ issued a written decision on March 28, 2007, finding Plaintiff not disabled within the meaning of the Social Security Act.  (AR at 93-102).  The decision became Defendant's final decision when the Appeals Council issued an opinion denying review.  (AR at 2-8).

Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  (Doc. 1).  For reasons that follow, the Magistrate Judge recommends that the District Court GRANT Plaintiff's Motion for Summary Judgment (Doc. 16) and DENY Defendant's Cross Motion for Summary Judgment (Doc. 19).  Plaintiff's case should be remanded to the Commissioner for an immediate award of benefits.

**I.  Standard of Review**

The Court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  The Commissioner's decision to deny benefits "should be upheld unless it is based on legal error or is not supported by substantial evidence."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir.2008) (internal citation omitted).  In determining whether the decision is supported by substantial evidence, the Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Id.* (internal quotation marks and citation omitted).

**II.  Analysis**

Whether a claimant is disabled is determined using a five-step evaluation process.  To establish disability, the claimant must show (1) she is not currently doing substantial gainful activity, (2) she has a severe impairment, and (3) her impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work.  At step five, the Commissioner must show that the claimant is able to perform other work.  20 C.F.R. §§ 404.1520, 416.920.

1
2
3
4
5
6
7
8
9
10

The ALJ found Plaintiff met her burden at steps one and two. While Plaintiff has performed some work subsequent to her alleged onset date, she was fired for poor performance after only a few months working at the bead shop and her other work, cleaning a friend's house, is only two to four hours a week. (AR at 98). At step two, the ALJ found Plaintiff suffered from the severe impairments of affective disorder and major depressive disorder. (AR at 99). The ALJ did not find Plaintiff showed severe impairments of tremors, migraine headache, back pain or fibromyalgia as she alleged. (AR at 99). At step three, the ALJ found that the severe impairments did not meet or equal a listed impairment. (AR at 99). The ALJ concluded at step four that Plaintiff has the RFC to perform her past work as a medical assistant and graphic artist. (AR at 99, 101).

11
12
13
14
15
16
17
18
19
20
21

Plaintiff appealed the ALJ's decision and submitted additional medical documentation. (AR at 9-81). The Court may properly consider additional evidence submitted to the Appeals Council if the Appeals Council addressed the evidence in its denial of the claimant's request for review. *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir.2000). The additional documents included treatment notes and a physical RFC assessment from Plaintiff's treating physician, a mental RFC assessment and additional medical evidence from Plaintiff's treating nurse practitioner at CODAC, and a medical evaluation from an examining rheumatologist. (AR at 9-81). The Appeals Council considered the additional evidence submitted by Plaintiff and upheld the ALJ's denial of benefits as free of legal error and supported by the substantial evidence in the record. (AR at 2-8).

22
23
24
25

In her appeal to this Court, Plaintiff argues the ALJ erred in (1) dismissing the evaluation by the Disability Assessment Research Clinic of the University of Arizona ("DARC"); (2) rejecting the opinion of the nurse practitioner; and (3) failing to credit the opinions of treating professionals with sufficient weight. (Doc. 16).

26

**A.  The ALJ Erred in Discounting the Disability Assessment Research Clinic Evidence**

27
28

After Plaintiff lost her last graphic artist job, she was referred to DARC in 2005. (AR at 355, 377). At DARC a team of doctors with varied specialized education evaluate a

1  person's vocational abilities, provide short-term counseling, and prepare a person to reenter

2  the workforce.  (AR at 355, 377).  As part of Plaintiff's rehabilitation, four doctors

3  administered numerous psychological tests, evaluated Plaintiff at different times and

4  produced reports on her current state, ability to work, and progress through rehabilitation.

5      In denying Plaintiff disability, the ALJ only addressed the opinion of one of the four

6  doctors.  The ALJ declined to give any weight to Dr. Ross's opinion that Plaintiff was

7  limited to sedentary work as Dr. Ross is a licensed psychologist.  (AR at 100).  The ALJ did

8  not address any of the other evidence generated by Dr. Ross's interaction with Plaintiff.  The

9  ALJ mentioned one other doctor from DARC.  The ALJ stated Plaintiff received counseling

10  from Dr. Rastatter, an education counselor at DARC with his Ph.D.  The ALJ failed to state

11  whether or not she gave evidence from Dr. Rastatter any weight.  (AR at 100).  The ALJ did

12  not comment on Dr. Bressler's evaluation of Plaintiff nor of Dr. Smith's observations of

13  Plaintiff during the intake interview.  Nor did the ALJ comment on any of the lengthy

14  evidence generated from Plaintiff's rehabilitation attempt at DARC, including the

15  psychological testing.

16      The Commissioner contends substantial evidence supports the ALJ's decision to not

17  accord weight to the doctors' opinions and evidence from DARC.  The Court disagrees.  .

18  The ALJ erred first by failing to acknowledge all the evidence from DARC, including

19  reports from all four doctors and results from the psychological testing.  Second, the ALJ

20  erred by failing to give the doctors' opinions appropriate weight.  The Court will address the

21  opinions and evidence generated by the doctors at DARC.

22      ***Dr. Ross, Treating Psychologist at DARC***

23      The doctor who handled Plaintiff's case most extensively at DARC was the treating

24  psychologist, Dr. Donald Ross, Ed.D.  Dr. Ross evaluated Plaintiff, administered

25  psychological testing, participated in meetings about Plaintiff, summarized Plaintiff's

26  ongoing counseling sessions, summarized the evidence gathered by the other doctors on

27  Plaintiff's case and opined about Plaintiff's ability to maintain employment after Plaintiff

28  was fired from her bead store job.  (AR at 355, 377, 382).

1    Dr. Ross's thorough evaluation of Plaintiff, his ongoing work on her case while she

2    was at DARC and his summary of her counseling sessions and the evidence gathered by the

3    other doctors all show that Dr. Ross was entitled to the weight of a treating physician.  20

4    C.F.R. § 404.1513(a)(2) (licensed psychologists are acceptable medical sources).  More

5    weight is given to a treating physician's opinion than to the opinion of a non-treating

6    physician because a treating physician "is employed to cure and has a greater opportunity to

7    know and observe the patient as an individual."  *Andrews v. Shalala*, 53 F.3d 1035, 1040-

8    1041 (9th Cir.1995) (internal quotation marks and citation omitted).

9    While Dr. Ross was treating Plaintiff in a vocational rehabilitation context, his

10    treatment focused on alleviating Plaintiff's mental impairments, medical conditions, that

11    affected her ability to obtain and maintain employment.  Dr. Ross had opportunity to know

12    and observe Plaintiff through multiple meetings with and about her as well as through the

13    psychological testing he administered and analyzed.  He was specifically "employed to

14    cure" Plaintiff's mental impairments so she could be successfully employed again.  Dr.

15    Ross's opinion on Plaintiff's mental impairments and her ability to work, as a doctor who

16    was expressly trying to rehabilitate Plaintiff, was critical and should not have been dismissed

17    by the ALJ.  *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2) ("Medical opinions are

18    statements from physicians and psychologists or other acceptable medical sources that

19    reflect judgments about the nature and severity of your impairment(s), including your

20    symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

21    physical or mental restrictions.").

22    Dr. Ross's opinion and evidence about Plaintiff's ability to work was contradicted by

23    the Agency's reviewing psychologist, Dr. Paul Tangeman.  The ALJ gave "great weight" to

24    Dr. Tangeman's opinion that Plaintiff had minimal mental limitations.  (AR at 101).  Dr.

25    Tangeman reviewed Plaintiff's medical records and found Plaintiff had only mild restriction

26    of activities of daily living, mild difficulties in maintaining social functioning, mild

27    difficulties in maintaining concentration, persistence or pace and no episodes of

28    decompensation.  (AR at 101, 331-344).  He did note Plaintiff suffered from major

depressive disorder and anxiety NOS but opined symptoms would not last for 12 months or more.  (AR at 331).  In noting Plaintiff's depression, Dr. Tangeman checked six of the nine boxes on the Psychiatric Review Technique Form indicating symptoms from which Plaintiff suffered.  (AR at 334).  These symptoms included sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, thoughts of suicide, and hallucinations, delusions or paranoid thinking.  (AR at 334).  Dr. Tangeman opined Plaintiff's symptoms would improve within twelve months with medication and continued treatment.  (AR at 343).

Because there was a conflict in evidence between Dr. Ross's opinion, as the treating psychologist, and Dr. Tangeman's opinion, as a reviewing psychologist, the ALJ needed to resolve the conflict.  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." 20 C.F.R. § 404.1527(d); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th  Cir.2001) (internal quotation marks and citation omitted).  When a treating physician's opinion is contradicted by a non-treating doctor, the ALJ can rely on the opinion of the non-treating physician and reject the opinion of a treating physician only if the ALJ provides "specific and legitimate reasons" supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995) (internal quotation marks and citation omitted).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Swanson v. Sec. of HHS*, 763 F.2d 1061 (9th Cir.1985).

The ALJ attempted to offer specific and legitimate reasons for discounting Dr. Ross's opinion but ultimately the reasons fail as they are not supported by substantial evidence. The ALJ acknowledged Dr. Ross conducted an evaluation of Plaintiff in which Dr. Ross opined Plaintiff was limited to sedentary work but the ALJ stated that she gave "no weight to this opinion as it is inconsistent with the treatment notes and because the doctor's opinion appears to rely in part on an assessment of impairments for which the Plaintiff received no

treatment from that doctor." (AR at 100). The ALJ also found Dr. Ross's opinion was "inconsistent with the ongoing mental health treatment [of Plaintiff] at CODAC." (AR at 101).

The ALJ erred in dismissing the evidence provided by treating psychologist Dr. Ross. Substantial evidence does not support the ALJ's decision to give the reviewing psychologist's opinion "great weight." In fact, the evidence supports Dr. Ross's opinions and summaries about Plaintiff's impairments and, ultimately, her inability to work. Dr. Ross's conclusions are consistent with the treatment notes and psychological testing completed at DARC as well as Plaintiff's ongoing treatment at CODAC.

Because Plaintiff appeared motivated to work Dr. Ross initially concluded that DARC explore work options for Plaintiff. After Plaintiff was fired from the bead store job, Dr. Ross opined that Plaintiff was "very scattered and lacks organization skills." (AR at 383). He noted she was fired from the bead store because "she would forget things, become panicked and become depressed. Her energy level decreased and she became very tearful." (AR 383). Based on Plaintiff's overall health and her failure at the bead store, Dr. Ross ultimately concluded Plaintiff was not a viable candidate for further employment and DARC referred her back to her doctors to complete disability paperwork. (AR 383-384).

The ALJ first discounted Dr. Ross's opinions as not supported by the DARC treatment notes. This is incorrect. Dr. Ross found Plaintiff was suffering from serious psychological symptoms. The treatment notes from DARC doctors show Plaintiff "presented herself as an anxious, depressed" individual who was in treatment at CODAC. (AR at 389). Dr. Rastatter concluded Plaintiff was "experiencing very significant psychiatric, psychological problems" that made it difficult for her to concentrate and led to increased mental fatigue and errors." (AR at 388).

Notes from counseling sessions with Dr. Rastatter show Plaintiff demonstrated high levels of anxiety and depression, problems concentrating and mental fatigue. (AR at 393). Dr. Rastatter opined that Plaintiff's difficulty in concentrating and mental fatigue effected

1   her ability to perform as a graphic artist and that based on his observations, Plaintiff was "a

2   minimally viable candidate for any full-time employment..."  (AR at 396).  Dr. Smith

3   observed that Plaintiff was a "very depressed, guarded individual, with a flat affect." (AR at

4   375).  Plaintiff did have some improvement during the counseling sessions at DARC.  She

5   reported less anxiety and fear and better control of her emotions in later counseling sessions.

6   (AR at 353, 351).  This improvement, however, was temporary.  After her counseling

7   sessions, Plaintiff was hired at the bead store.  (AR at 383).  After only a few months,

8   Plaintiff was fired for forgetting things, panicking, being depressed and tearful.  (AR at 383).

9   The treatment notes from DARC support Dr. Ross's opinions that Plaintiff had limitations

10  effecting her ability to be employed.

11          The ALJ also discounted Dr. Ross's opinion by stating that the opinion included

12  impairments for which the claimant received no treatment from Dr. Ross.  It is unclear to

13  which impairments the ALJ is referring.  To the extent the ALJ is talking about impairments

14  due to low back pain, those impairments were identified by Dr. Bressler who worked as a

15  team with Drs. Ross, Rastatter and Smith in treating Plaintiff.  To the extent the ALJ is

16  talking about mental impairments, it is clear from the treatment notes at DARC that those

17  impairments are well-supported in the record and that the ALJ's discounting of those

18  impairments is not supported by substantial evidence in the record.

19          The ALJ also discounted Dr. Ross's opinion by stating that it was inconsistent with

20  the ongoing treatment of Plaintiff at CODAC.  As will be discussed when this Court

21  addresses the evidence from CODAC, this conclusion by the ALJ is wrong.  The treatment

22  Plaintiff received at CODAC shows she was consistently medicated for depression and

23  anxiety and that her symptoms of those impairments continued and affected her ability to

24  function.

25          The Commissioner attempts to argue Plaintiff's psychological testing completed by

26  Dr. Ross shows his opinions are not supported by these tests.  The Commissioner is

27  incorrect.  Dr. Ross administered and analyzed a Minnesota Multiphasic Personality

28

Inventory-2 ("MMPI-2").  On the MMPI-2, Plaintiff scored high on the F-Scale indicating either Plaintiff was faking symptoms or suffering serious psychological symptoms.  In analyzing the MMPI-2 testing, Dr. Ross noted elevated F-Scale scores can indicate faking but they are also associated with more chronic disorder.  (AR at 384).  Dr. Ross further noted that "a severely depressed" person may be responding truthfully.  (AR at 384).  Based on his knowledge of the testing and his evaluation of Plaintiff, Dr. Ross opined that Plaintiff was suffering from serious psychological symptoms and not faking.  (AR at 384).[1]

        The Commissioner further argues Dr. Ross failed to provide an objective mental status examination, did not diagnose any mental condition and did not provide any opinion as to Plaintiff's functional abilities.  In fact, as just discussed, Dr. Ross administered and analyzed the MMPI-2 showing Plaintiff suffered from serious psychological symptoms. Doctors at DARC also completed Battery Health Improvement testing on Plaintiff in April and May of 2005.  (AR at 358-370).  The BHI testing was administered by Dr. Daniel Bruns, Psy.D., Dr. John Disorbio, Ed.D. and contributions from Julia Disorbio, P.T.  (AR at 358).  On the BHI, Plaintiff had nine T scores above 60 including Depression, Anxiety, Hostility, Borderline, Symptom Dependency, Chronic Maladjustment, Family Dysfunction, Somatic Complaints and Pain Complaints.  (AR at 382, 391).  The testing showed "patient's extreme Anxiety and Depression scores indicate that she is much more emotionally distressed than the average patient."  (AR at 364).  Psychologically, Plaintiff had "very high scores on the Depression, Anxiety, Borderline, and Symptom Dependency scales and high scores on the Hostility and Chronic Maladjustment scales."  (AR at 359).  Results from these tests are objective evidence that Plaintiff is suffering from serious mental impairments.  Dr. Ross, while not specifically diagnosing Plaintiff with any particular psychological condition, opined that she suffered from serious psychological symptoms.  Based on the testing, Dr.

---

        [1] The Magistrate Judge notes the administrative record is missing a portion of this report.  (*See* AR 386) (summary is still in progress but remaining pages are not attached).

1   Ross opined Plaintiff was observed to learn tasks very quickly *but performed them at a*
2   *lower rate than required in her previous job.*  (AR at 395) (emphasis added).

3        The lengthy evidence generated by Dr. Ross during DARC's attempt to rehabilitate
4   Plaintiff was critical to an assessment of whether Plaintiff can work.  Dr. Ross initially
5   supported Plaintiff's motivation to return to employment.  But, after psychological testing,
6   counseling, and a failed attempt at employment as a sales person in a bead store, Dr. Ross
7   and DARC ultimately concluded Plaintiff suffered from severe impairments and could not
8   work.  (AR at 383-384).  These opinions, unlike the reviewing psychologist's opinion, are
9   supported by substantial evidence in the record.  It was error for the ALJ to discount this
10  evidence.

11            ***Other Medical Evidence from DARC - Dr. Rastatter, Ph.D.***

12       Dr. Rastatter holds a Ph.D. as an education counselor.  Because Dr. Rastatter has his
13  Ph.D. but is not one of the listed acceptable medical sources under the regulations, he is an
14  "other source" opinion that the ALJ was obligated to consider.  20 C.F.R. § 404.1513(d).  As
15  an "other source" Dr. Rastatter's opinions and reports are evidence that can "show the
16  severity of [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to work."  *Id.*

17
18       Dr. Rastatter conducted five counseling sessions with Plaintiff in an effort to help her
19  alleviate her psychological symptoms so she could obtain and maintain employment.  In the
20  earlier sessions, Dr. Rastatter described Plaintiff as "experiencing very significant
21  psychiatric, psychological problems for which she is receiving both group and individual
22  therapy treatment [from CODAC] at this time."  (AR at 388).  Dr. Rastatter opined that
23  Plaintiff's psychiatric/psychological conditions significantly impacted Plaintiff's abilities in
24  concentration, focus, making appropriate judgments and decisions.  (AR at 388).  In the
25  April and May 2005 assessment, Dr. Rastatter concluded, in part, that Plaintiff's
26  "psychiatric/psychological conditions are creating significant problems related to
27  concentration, focus, making appropriate judgments and decisions."  (AR at 388).  Because
28  Plaintiff's cognitive abilities were compromised, Dr. Rastatter opined her "prolonged mental

effort is resulting in increased mental fatigue, cognitive processing problems, increased cognitive processing errors."  (AR at 388).

Dr. Rastatter made the following observations that he opined would negatively impact Plaintiff's ability to work.  He stated that Plaintiff demonstrated generally high levels of anxiety and depression throughout Session 1; demonstrated problems sustaining concentration related to prolonged mental effort; he observed Plaintiff fatigue mentally very quickly in Session 1; he observed her begin to fall asleep toward conclusion of the session.  (AR at 393).

As part of his work with Plaintiff, Dr. Rastatter conducted Psycho/Social Assessment testing.  (AR 382).  Included in the testing was WAIS-III, in which Plaintiff performed average and above.  (AR at 382).  Plaintiff also performed the Comprehensive Trail-Making Test ("CTMT") in which she showed mild to moderate impairment.  (AR at 383).  Dr. Rastatter opined the impairments likely reflected her significant anxiety and depression. (AR at 383).  In the testing, Plaintiff was observed to learn tasks very quickly but performed them at a lower rate than required in her previous job.  (AR at 395).  "It is the evaluator's opinion that Ms. Albert's overall performance in [areas related to job as a graphic artist] is probably influenced by her problems related to concentration and focus."  (AR at 395). After the assessment, Dr. Rastatter opined that "because of Ms. Albert's psychiatric problems, she is a minimally viable candidate for any full-time employment situation in the competitive labor market.  All jobs, including part-time, would have to be analyzed and then modified to accommodate her psychiatric/psychological restrictions and limitations."  (AR at 383).

In a later session in July 2005, Plaintiff demonstrated "significantly less anxiety/fear" and Dr. Rastatter observed Plaintiff was beginning to take control of her situation.  (AR at 351).  The improvement, however, was temporary.  In her next session in July, Plaintiff again was experiencing problems "sustaining the actions required to keep her in emotional control."  (AR at 349).

1   The ALJ was silent on the weight she gave Dr. Rastatter's opinion.  The ALJ simply

2   said: "Dr. Charles J. Rastatter, Ed.D., counseled the claimant due to her anxiety and

3   depression secondary to family and personal problems."  (AR at 100).  The Commissioner

4   attempts, unsuccessfully, to argue Dr. Rastatter's opinion was relied upon by the ALJ to

5   support her conclusion that Plaintiff was not disabled.  This is not correct.  First, the ALJ did

6   not say he was relying on Dr. Rastatter's opinion and second, all the evidence from Dr.

7   Rastatter supports a finding that Plaintiff is disabled.

8   The ALJ did not address the medical evidence from Dr. Rastatter who was an "other

9   source" under the regulations.  This other medical evidence is critical to determining

10  whether Plaintiff is disabled.  It was error for the ALJ to not consider it.  Like the evidence

11  from Dr. Ross, the evidence from Dr. Rastatter shows Plaintiff attempting to rehabilitate so

12  that she can work and ultimately completely failing in that attempt.

13  ***Other Medical Evidence from DARC, Dr. Bressler, M.D.***

14  Dr. Bressler is an examining medical doctor and is therefore an acceptable medical

15  source under the regulations.  20 C.F.R. §§ 404.1513(a), 404.1527(d); *see also Lester*, 81

16  F.3d at 830 (the Ninth Circuit distinguishes among the opinions of three types of physicians:

17  (1) those who treat the plaintiff (treating physicians);  (2) those who examine but do not treat

18  the plaintiff (examining physicians);  and (3) those who neither examine nor treat the

19  plaintiff (nonexamining physicians).  Because Dr. Bressler examined Plaintiff one time, he is

20  an examining source as defined under the regulations.  20 C.F.R. § 404.1527(d).

21  Dr. Bressler, M.D. conducted an initial evaluation of Plaintiff and found some

22  physical limitations based on Plaintiff's low back pain and obesity.  (AR at 377-380).  He

23  found Plaintiff could lift 5-10 lbs occasionally, stand at least 4+ hours a day and sit at least 8

24  hours a day with no reaching or handling limitations. (AR at 380).  Dr. Bressler attributed

25  the limitations to Plaintiff's low back pain and opined that she should consult with an

26  orthopedic.  (AR at 380).  At the time of the initial assessment, Plaintiff was taking 225 mg

27

28

q/d of Effexor; Abilify 5 mg q/d; Ranitidine 300 mg bid; Clonazepam 1 mg bid; Seroquel 25 mg q/d (nightly); Relpax 40 mg prn.  (AR at 378, 381).

The ALJ did not address Dr. Bressler's opinion of Plaintiff's limitations based on low back pain and obesity that he observed in the evaluation.  Dr. Bressler is an examining physician and it was error for the ALJ to ignore this medical opinion from him.  The Commissioner attempted to offer reasons to support the ALJ's decision to ignore Dr. Bressler's opinion but the Court may not "affirm the ALJ's ... decision based on evidence the ALJ did not discuss." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.2003); *see also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir.2001).

Further, the Commissioner's reasons are not sufficient to discount the opinion of Dr. Bressler.  The Commissioner alleges Dr. Bressler's clinical findings were not supported by his examination notes.  Dr. Bressler did note that Plaintiff could step on and off the examination table and bend without pain.  He also noted Plaintiff experiences low back pain and was obese.  Based on those observations in his examination, Dr. Bressler identified some physical limitations that would limit Plaintiff to sedentary work.  It was error for the ALJ to ignore this opinion.

### *Other Medical Evidence from DARC - Dr. Smith, D.ED.*

Dr. David Smith is a professor of rehabilitation and the Clinic director.  (AR at 373). He completed an intake interview with Plaintiff and determined she was "very depressed, guarded and had a flat affect."  (AR at 382).  Dr. Smith also observed that Plaintiff was obese and deconditioned.  (AR at 382).  Dr. Smith's opinions and observations were not considered at all by the ALJ.  Dr. Smith evaluated Plaintiff with the purpose of determining if DARC could rehabilitate so Plaintiff could obtain and maintain employment.  His observations and opinions were "other evidence" and relevant to determining whether Plaintiff is disabled.  It was error for the ALJ to not consider this evidence.

### *Other Evidence from the Record Showing ALJ Erred Discounting DARC Evidence*

1

***Plaintiff's Work History and Earnings***

2

3      Plaintiff worked with some regularity after high school through 2004.  Plaintiff

worked as a medical assistant from January 1984 through January 1992.  (AR at 110).

4

Plaintiff then attended technical school and received a certificate in graphic design.  (AR at

5

108-109).  Plaintiff worked as a graphic artist from April 1992 through May 2004.  (AR at

6

110).  Between 1992 through 2002, Plaintiff earned over $10,000 dollars annually, with five

7

years above $20,000.  (AR at 201).  In 2000, Plaintiff reached an all-time high income of

8

$29,354.  (AR at 201).  She earned $27,451.53 in the following year, 2001.  (AR at 201).

9

10      Beginning in 2002, Plaintiff's income began to drop.  Plaintiff was fired from

multiple graphic artist jobs because she made a lot of mistakes.  (AR at 111-115).  Plaintiff

11

earned only $12,106.01 in 2002.  (AR at 201).  Between November 2003 and March 2004,

12

Plaintiff worked at Target.  (AR at 110).  In those years, she earned only $1,930.49 in 2003

13

and $7,133.65 in 2004.  (AR at 201).  In 2005, Plaintiff earned $3,222.24.  (AR at 201).  No

14

income is shown for any year 2006 to present.  (AR at 201).

15

16      The administrative record contains a note from a social security administration

employee who talked with Plaintiff in November 2005.  (AR at 206).  Plaintiff told the

17

employee that she had just started working again and "she thinks it is going to work out for

18

her."  (AR at 206).  Plaintiff had just been hired to work at the bead store.  Plaintiff was fired

19

a few months later from this job because of her poor performance.  (AR at 128).  Plaintiff

20

was fired for not remembering responsibilities, panicking, making mistakes and becoming

21

tearful.  (AR at 287).

22

23      Plaintiff's work history and earnings show that since around 2002 Plaintiff has

worked in increasingly less demanding jobs and that Plaintiff has failed to maintain

24

employment in those less demanding jobs.  Plaintiff's work history and earnings support the

25

conclusions of the DARC doctors that Plaintiff suffered serious impairments and was unable

26

to maintain gainful employment.

27

28

**B.  The ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Nurse Practitioner**

Nurse Practitioner Beth Newhouse treated Plaintiff at CODAC from May 2004 through at least June 2007.  Given the length of time the nurse practitioner treated Plaintiff and the number of times she treated her, the nurse practitioner is an other medical source to whose opinion the ALJ should have given significant weight.  *See* 20 C.F.R. § 404.1513(d)(1).  The Social Security Administration, through its rulings, states the weight given to an other medical source's opinion is determined by analyzing the same factors utilized for weighing opinions from "acceptable medical sources."  SSR 06-03p.  The ALJ should consider how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with the other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.  SSR 06-03p.

As an other source, the nurse practitioner can show evidence of Plaintiff's severity of impairments and how it affects Plaintiff's ability to work.  20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  Depending on the circumstances, there may be sometimes when it is appropriate to give an other medical source more weight than an acceptable medical source.  SSR 06-03p.  The Social Security Administration has opined "[o]pinions from these medical sources [including nurse practitioners], who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03p.

Based on more than two years of treating Plaintiff, the nurse practitioner completed a form opining Plaintiff was seriously mentally ill in October 2006.  (AR at 76-77).  On the form, Plaintiff's Global Assessment of Functioning ("GAF") was a 50, indicating serious symptoms or serious impairment in social, occupational, or school functioning.  *Diagnostic and Statistical Manual of Mental Disorders*, (4th Ed. Text Rev. 2000).  Later, in February

1    2007, the nurse practitioner completed a Mental RFC Assessment.  (AR at 442-444).  In the

2    mental RFC, the nurse practitioner opined that Plaintiff was markedly limited in eight

3    categories and moderately limited in six categories.  (AR at 442-443).  The nurse

4    practitioner found no evidence of limitation or not significantly limited in six categories.

5    (AR at 442-443).  Markedly limited categories included the ability to remember and carry

6    out detailed instructions, maintain attention and concentration for extended periods of time

7    and maintain regular attendance and be punctual within customary tolerances.  (AR at 442).

8    The nurse practitioner opined "[t]he client [sic] inability to follow daily routines, & her

9    inability to understand & remember detailed instructions due to her mental health has been

10   the cause of her being fired several times from her jobs."  (AR at 444).

11        The ALJ gave no weight to the nurse practitioner's opinion that Plaintiff was disabled

12   due to her "serious mental illness" with a GAF of 50.  (AR at 101, 76-77).  The ALJ found

13   the nurse practitioner's opinion was "without substantial support from the other evidence of

14   record."  (AR at 101).  The ALJ further stated that she gave no weight to the opinion of the

15   nurse practitioner "as her opinion is too restrictive and not consistent with the treatment

16   notes."  (AR at 101).[2]  The ALJ did not acknowledge any of the ongoing treatment notes or

17   Plaintiff's consistent anti-depressant and anti-anxiety medications, except to say that the

18   treatment notes showed Plaintiff was improving.

19        After the administrative hearing, Plaintiff's attorney submitted further documents to

20   the Appeals Council.  The documents included an updated Mental RFC Assessment from the

21   nurse practitioner completed in June 2007.  (AR at 54-55).  This mental RFC was

22   substantially similar to the one the nurse practitioner completed in February 2007.  In the

23

24        [2] Plaintiff argues the ALJ rejected the medical evidence from the nurse practitioner as

25   "an inappropriate medical source."  (Doc. 16, p. 10).  The Commissioner responded by arguing
     the nurse practitioner cannot be an acceptable medical source and therefore, her opinions cannot

26   carry the weight of a treating physician's opinion.  The Court notes the ALJ did not actually
     reject the nurse practitioner's opinion because she was not an acceptable medical source.

27   Rather, the opinion and evidence was rejected as not consistent and supported by the other
     evidence in the record.

28

mental RFC, the nurse practitioner opined that Plaintiff was markedly limited in five

categories and moderately limited in ten categories.  (AR at 54-55)  She found Plaintiff

markedly limited in:

> The ability to understand and remember detailed instructions
> The ability to carry out detailed instructions
> The ability to make simple work-related decisions
> The ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms
> The ability to perform at a consistent pace without an unreasonable number and length of rest periods

(AR at 54-55)  She also found Plaintiff moderately limited in:

> The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances
> The ability to sustain an ordinary routine without special supervision
> The ability to work in coordination with or proximity to others without being distracted by them
> The ability to interact appropriately with the general public
> The ability to ask simple questions or request assistance
> The ability to accept instructions and respond appropriately to criticism from supervisors
> The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes
> The ability to respond appropriately to changes in the work setting
> The ability to travel in unfamiliar places or use public transportation
> The ability to set realistic goals or make plans independently of others

(AR at 54-55)  The nurse practitioner further opined Plaintiff had a current GAF of 55 and

GAF for the year that fluctuated between 35-60.  (AR at 55).

In addition to the June 2007 mental RFC, the nurse practitioner sent an explanatory

letter to the Appeals Council.  (AR at 56).  In the letter, the nurse practitioner emphasized

her opinion that Plaintiff was disabled and clarified why treatment notes might contain

statements about Plaintiff improving even though overall, Plaintiff's functional capacity had

not improved.  (AR at 56).  The nurse practitioner opined that Plaintiff is not able to perform

her past relevant work or any job in the national economy.  (AR at 56).  She identified

Plaintiff as having a GAF that ranged from 35 to 60 in the past year with a current GAF of 55 "which is considered moderately severe mental disorder." (AR at 56). She opined that Plaintiff's functional capacity had not changed over three years of care. (AR at 56). She further noted "[t]he fact that the record suggests that there has been some improvement does not mean that the improvement has been constant or that the improvement has resulted in a functional capacity that exceeds the level as indicated in the [mental RFC assessment." (AR at 56).

The Appeals Council considered the additional June 2007 evidence from the nurse practitioner along with her evidence that was submitted to the ALJ. After considering all the evidence, the Appeals Council concluded the ALJ's decision to discount the nurse practitioner's opinion was free of legal error and supported by substantial evidence. The Court disagrees.

The treatment notes from CODAC as well as the evidence from DARC show the ALJ's decision to discount the nurse practitioner's opinion is not supported by substantial evidence. In fact, when records from DARC and CODAC are compared, the evidence shows the nurse practitioner's opinions of Plaintiff's limitations align with the limitations and impairments identified by doctors at DARC as well as the treatment notes from the nurse practitioner's facility, CODAC.

The ALJ gave no weight to the nurse practitioner's opinions and mental RFC assessment, in part, because it was not supported by other evidence in the record and too restrictive. This is incorrect. Doctors from DARC identified similar impairments as the nurse practitioner identified in her mental RFCs. Dr. Ross, treating psychologist from DARC, described Plaintiff as "very scattered and lacks organization skills." (AR at 383). He noted that Plaintiff was fired from the bead store for being forgetful, becoming panicked and tearful. (AR at 383). These observations and opinions support the nurse practitioner's finding of Plaintiff markedly limited in remembering and carrying out detailed instructions, making simple work-related decisions and completing a normal work-day and workweek.

(AR 54-55).  Plaintiff could not maintain employment at a bead store after counseling and rehabilitation to prepare for that job.

Psychological testing and doctors opinions of Plaintiff's mental impairments all support the nurse practitioner's opinion that Plaintiff was seriously mentally ill and markedly and moderately limited in a number of abilities necessary for employment.  Dr. Ross administered the MMPI-2 psychological testing of Plaintiff and found she suffered from serious psychological symptoms.  (AR at 384).  On the BHI psychological test, Plaintiff had nine T scores above 60.  (AR at 382, 391).  Included in those scores were extreme Anxiety and Depression.  (AR at 364).  Doctors at DARC described Plaintiff as having significant psychiatric, psychological problems.  (AR at 388, 383, 389, 375).

Plaintiff's work history and earnings also support the nurse practitioner's opinions and the limitations identified on the mental RFC assessment.  Plaintiff worked fairly consistently from high school through 2002.  (AR at 200-201, 108-110).  At that point her income sharply declines over the next couple of years and she is unsuccessful in increasingly less demanding jobs.

Dr. Rastatter, Plaintiff's counselor at DARC, opined Plaintiff was "a minimally viable candidate for full-time employment..."  (AR at 396).  Ultimately, all the doctors working on Plaintiff's case at DARC concluded that she was "not stable" and could not work.  (AR at 383).  This conclusion aligns with the nurse practitioner's opinions about Plaintiff's inability to work and her identified marked and moderate limitations on the mental RFC.

The ALJ further discredited the nurse practitioner's opinion as not consistent with treatment notes from CODAC.  This is incorrect.  The treatment notes from CODAC show that Plaintiff has moments when she feels better but overall she is impaired by depression and consistently medicated to treat the depression, anxiety and panic attacks.  Treatment notes show Plaintiff consistently takes Effexor, Abilify, and Clonazepam to control her depression and anxiety. (AR at 300-301, 322, 324, 442-444, 446, 448-450, 452-454, 464-

465, 471, 473).  Notes generally show Plaintiff's medications are frequently adjusted and she is not taken off of them.  (AR at 300-301, 322, 324, 330, 446, 448, 450, 453, 454, 464, 465, 471).  While the treatment notes have general statements about Plaintiff feeling better, they also contain concerns about Plaintiff contemplating cutting herself, sleeping during the day, being tired and depressed, having panic attacks, and actually doing some superficial cutting on her arm.  *Id*.

The Commissioner points to remarks in the treatment notes that make positive observations of Plaintiff's current state.  These remarks, however, when taken in the context of all the treatment notes and the other evidence in the record, including the evidence from DARC, show Plaintiff is consistently on medication for her mental impairments and unable to hold down a job at a bead store.  For instance, in the treatment note from June 5, 2005, cited by the Commissioner, Plaintiff reports feeling her depression is well-controlled with her current medications but in the same visit she also reports paranoia and obsessive thoughts about cutting herself.  (AR at 300).  In April 2005, treatment notes observe Plaintiff as depressed, experiencing panic attacks and superficially cutting herself.  (AR at 322).  In March 2006, Plaintiff is described as having some difficulties at work and some depressed mood but having a stable mood overall.  (AR at 450).  In October 2006, Plaintiff described a more "up mood" but also told the nurse practitioner that she needed a full Clonazepam to decrease her anxiety.  (AR at 471).  Then in March 2007, Plaintiff was again having depression and higher anxiety.  (AR at 81).

The nurse practitioner's mental RFC, completed twice, her letter opining about Plaintiff's mental impairments and the effect on her ability to work, and the treatment notes are all evidence that the ALJ should have significantly weighed as they show Plaintiff is disabled.  This evidence from the record shows the ALJ erred in discounting the nurse practitioner's opinions and identified limitations for Plaintiff.  More than showing mere error, the records from DARC and CODAC, when analyzed together, provide compelling evidence that Plaintiff is disabled.

1

**C.  The ALJ Erred in Not Crediting the Treating Professionals with Sufficient Weight**

2

3

The doctors from DARC were addressed *supra*.  The Court will address the remaining doctors.

4

*Dr. Bakotic - Plaintiff's Treating Physician*

5

6

Dr. Bakotic treated Plaintiff from October 2004 through, at least, August 2006.  (AR at 474-485, 43-48).  Dr. Bakotic was a treating physician.  The record contains multiple pages of treatment notes from Dr. Bakotic's medical appointments with Plaintiff.  He found Plaintiff consistently suffered from low back pain and often noted knee and ankle pain and migraines, joint pain and fibromyalgia.  (AR at 474-485, 43-48).

7

8

9

10

11

As part of her additional documents offered to the Appeals Council, Plaintiff submitted a physical RFC assessment completed by Dr. Bakotic in June 2007.  (AR at 40).  Dr. Bakotic found Plaintiff had the ability to stand without a formal break for less than one hour.  (AR at 40).  Plaintiff had the ability to walk without a formal break for one to two hours and the ability to stand during an 8-hour work day with three formal breaks for less than two hours.  (AR at 40).  Plaintiff could lift and carry for less than two hours in an eight-hour work day less than 10 pounds.  (AR at 40).  Dr. Bakotic found Plaintiff moderately limited in upper extremity limitations and bending and markedly limited in climbing and squatting.  (AR at 40).  Limitations would require Plaintiff to lie down during the day and Plaintiff was limited in ability to work around heights, moving machinery, operating machinery, and exposure to fumes and chemicals.  (AR at 40).

12

13

14

15

16

17

18

19

20

21

22

The ALJ found Plaintiff suffered from no severe physical impairments at step two in the evaluation process.  (AR at 99).  The ALJ found the alleged physical impairments including back pain did not impose more than a minimal impact on Plaintiff's ability to perform work related activities.  (AR at 99).  The ALJ found Plaintiff did not suffer any exertional or nonexertional limitations.  (AR at 99).  The ALJ focused on Plaintiff's reported daily activities to support his finding.  (AR at 99).  The ALJ also relied on the opinion of reviewing Agency doctor, Dr. Tangeman.  (AR at 101).  Dr. Tangeman found Plaintiff

23

24

25

26

27

28

1  suffered only mild restriction of daily activities and other mild restrictions.  (AR at 101).

2  The ALJ completely ignored the medical evidence from Dr. Bakotic.

3         The Appeals Council determined the physical RFC submitted from Dr. Bakotic was

4  not helpful as it was completed after the administrative hearing and the treatment records

5  from Dr. Bakotic contained "very little" information.  (AR at 4).  This Court disagrees.  The

6  treatment notes and physical RFC from Plaintiff's treating doctor were important evidence

7  that the Appeals Council should have given the ALJ an opportunity to consider.  It was error

8  for this evidence to not be considered in evaluating Plaintiff's physical limitations and

9  ultimate disability.

10        Dr. Bakotic's physical RFC assessment is supported, at least to some extent, by other

11  evidence in the record including Dr. Baktotic's treatment records showing Plaintiff suffered

12  consistently from low back pain and reports from DARC doctors that Plaintiff was limited

13  by low back pain and obesity.  Determining whether this evidence sufficiently supports the

14  physical limitations identified by Dr. Bakotic is a task best left to the ALJ who could gather

15  further information.  With that said, the Court will not find it necessary to remand this case

16  back to the ALJ to consider this evidence.  Plaintiff's mental impairments standing alone

17  show Plaintiff is disabled.  Remand is not appropriate when disability is evident.  It is clear

18  from Plaintiff's well-documented mental impairments that the ALJ would be required to find

19  Plaintiff disabled.  *Benecke v. Barnhart*, 379 F.3d 587,, 593 (9th Cir.2004).

20

21                    ***Dr. Bergstrom - Rheumatologist Who Evaluated Plaintiff***

22        Dr. Bergstrom is a rheumatologist who examined Plaintiff in August 2007 after the

23  administrative hearing.  (AR at 52-53).  Dr. Bergstrom only saw Plaintiff one time for an

24  evaluation and therefore, was an examining physician.  (AR at 52), 20 C.F.R. § 404.1527(d).

25  During the examination, Dr. Bergstrom tested and observed multiple complaints, physical

26  findings, trigger points with positive tender points and distribution of pain.  (AR at 52-53).

27        Dr. Bergstrom's evaluation was submitted to the Appeals Council in Plaintiff's

28  additional documents.  The Appeals Council properly identified Dr. Bergstrom as an

examining physician and then found the ALJ acknowledged Plaintiff's diagnosis of fibromyalgia.  The Appeals Council found Dr. Berstrom's evaluation did not change the ALJ's conclusion that Plaintiff did not have severe impairments due to her fibromyalgia. (AR at 4-5).

The Court agrees with the Appeals Council.  The rheumatologist saw Plaintiff only one time and completed a brief, non-explanatory evaluation of her.  Dr. Bergstrom did not write a report or opine as to Plaintiff's impairments.  Substantial evidence supports the ALJ's finding that Plaintiff's fibromyalgia did not severely impair her.  Significant to this Court, Plaintiff testified at the administrative hearing that fibromyalgia was not the reason she was not working, but rather her physical pain was a "bad back."  (AR at 130).  The Court need not remand this case back to the ALJ to consider the evidence of Dr. Bergstrom.

### Dr. Karl Gathof from CODAC

Dr. Gathof was part of the treatment team at CODAC.  He saw Plaintiff at least twice and participated in her care.  In a psychiatric evaluation on September 9, 2004, Dr. Gathof found Plaintiff suffered from numerous mental impairments including major depressive disorder, symptoms of anxiety, panic and obsessive compulsive disorder.  (AR at 72). Plaintiff had thoughts of paranoia, diminished worth, helplessness/hopelessness, and fearful. (AR at 72).  Dr. Gathof gave Plaintiff a GAF of 60, indicating moderate difficulties in social, occupational or school functioning.  (AR at 73).  Dr. Gathof saw Plaintiff again in December 2004 and observed she displayed depressive symptoms and increased anxiety.  (AR at 330).

The ALJ did not consider the medical evidence from Dr. Gathof.  Failure to consider this evidence was error.  This evidence from Dr. Gathof is supported by other substantial evidence in the record and further shows the significant mental impairments Plaintiff was experiencing.

### E.  Plaintiff's Reply Brief Raises the Issue of her Credibility

For the first time in her reply brief, Plaintiff raises the issue of the ALJ finding her less than credible. (*See* Doc. 22, pp. 18, 16-20). The Ninth Circuit has repeatedly held, where new evidence is submitted for the first time in a reply brief, that evidence may be stricken. *See Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n. 3 (9th Cir.1993) (finding that new information submitted with reply brief was improper and striking the same); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996), *cert. denied* 522 U.S. 808 (1997) (court may refuse to consider new evidence submitted with reply brief on motion for summary judgment).

The Court will address the credibility finding. The Commissioner will have the opportunity to respond to Plaintiff's credibility argument if the Commissioner chooses to file objections to this Report and Recommendation. *See Provenz*, 102 F.3d at 1483 (court considering new evidence in reply brief when non-movant has an opportunity to reply).

After considering the evidence in the record, the ALJ found Plaintiff's statements about "the intensity, duration and limiting effects" of her symptoms "not credible." (AR at 100). The ALJ relied heavily on Plaintiff's reported daily activities to find her not credible. (AR at 101). The ALJ reported generally that Plaintiff accomplished major household chores and outings. (AR at 101). The ALJ noted Plaintiff did laundry, cleaning, meal preparation, grocery shopping, walked her dog, went to therapy, sewed dresses and took her teenage sons to their activities. (AR at 101).

The mere fact that a claimant engages in activities such as grocery shopping and driving a car "does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) (internal quotation marks and citation omitted); *see also Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir.1987) (a claimant need not "vegetate in a dark room" to be eligible for benefits). Daily activities may only form the basis of an adverse credibility finding if the claimant is able to spend "a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work

setting...." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).  "In evaluating whether the claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's ability to work on a *sustained basis*. "  *Lester*, 81 F.3d at 833 (emphasis in original). "Occasional symptom-free periods--and even the sporadic ability to work--are not inconsistent with disability." *Id*.

The ALJ's conclusion that Plaintiff is not credible is not supported by substantial evidence in the record.  Plaintiff did describe a number of activities that she completed during her days but her descriptions, when reviewed in context of the whole record, show a person accomplishing limited tasks that would not translate to the ability to be gainfully employed.

For instance, on a Adult Function Report in May 2005, Plaintiff described her daily activities as: "I eat breakfast.  I wake up my sons & feed them breakfast.  I clean out the dishwasher & start the laundry.  I send my sons to school.  I walk the dog.  I sleep until therapy or group.  I make dinner.  I clean up the dinner and go to bed."  (AR at 217). Plaintiff also stated that she sleeps all day and cannot sleep at night and that she has nightmares.  (AR at 218).  In a August 15, 2006 meeting that included staff from the JOBS program, Plaintiff reported that she sleeps "around the clock" and she would like to hold a job.  (AR at 287).  She explained that she was fired from her previous position at a bead store because she could not remember things and made mistakes.  (AR at 287).  Plaintiff stated she would not remember how to do something, go into a panic, make mistakes and then into a depression cycle where her energy severely decreased and she became very tearful.  (AR at 287).

When asked at the administrative hearing if psychological treatment was helping, Plaintiff stated "it seems to be a slow process.  It just seems slow . . I've been going for two years, and I'm still have depression.  I still have PTSD and I still have bipolar."  (AR at 118).  Of her activities, Plaintiff said "Most days I'm, I'm in bed.  I have a dog that I take for walks every day.  So I get, I get out of bed.  But then I can climb right back into it and spend

the rest of the day in bed." (AR at 120).  Plaintiff stated she made a lot of mistakes in her desk job.  She said "I constantly am nervous and upset. And I constantly make mistakes. And sometimes I don't even realize when I'm making the mistakes, that I'm making a mistake." (AR at 122).  She makes mistakes in her daily living such as letting a cake burn in the oven or starting a task like cleaning the bedroom and then moving to laundry, forgetting that she was cleaning the bedroom.  (AR at 123).

Plaintiff's daily activities and her self-reports of disabling symptoms align with the other evidence in the record.  All the evidence from DARC supports Plaintiff's self-report that she engages in some limited daily activities but cannot maintain gainful employment. Plaintiff presented to DARC with multiple psychological and psychiatric impairments but doctors also observed Plaintiff was motivated to work.  Doctors decided to give Plaintiff an opportunity to return to employment by admitting her into the rehabilitation program. Plaintiff participated in psychological testing and counseling and found a job as a sales person at a bead store.  When Plaintiff fell apart in that job and was fired, doctors at DARC ultimately concluded Plaintiff suffered from severe impairments that prevented her from maintaining gainful employment.

Further, evidence from Plaintiff's ongoing treatment at CODAC supports her report of limited daily activities and disabling impairments.  Medical personnel at CODAC consistently medicated Plaintiff for depression and anxiety.  Plaintiff reported to CODAC some good days or increase in mood but ultimately, CODAC medical personnel observe and treat Plaintiff for severe depression with a fluctuating GAF between 35-60.

The ALJ's finding that Plaintiff was not credible is not supported by substantial evidence.  In fact, the evidence supports finding Plaintiff credible as to her limited daily activities and self-reports of disabling psychological impairments.  It was error for the ALJ to discredit Plaintiff.

**III.  Remedy**

1    Having considered the record as a whole, the Court concludes that Defendant's

2   decision denying benefits should be reversed because it is based on legal error and is not

3   supported by substantial evidence.  *See Ryan,* 528 F.3d at 1198.  The decision to remand for

4   further development of the record or for an award of benefits is within the discretion of the

5   Court.  42 U.S.C. § 405(g); *see Harman,* 211 F.3d at 1173.  This Circuit holds an action

6   should be remanded for an award of benefits where the ALJ has failed to provide legally

7   sufficient reasons for rejecting the  evidence, no outstanding issues remain that must be

8   resolved before a determination of disability can be made, and it is clear from the record that

9   the ALJ would be required to find the claimant disabled were such evidence credited as true.

10  *Benecke,* 379 F.3d at 593 (citations omitted); *see also Varney v. Sec'y of HHS*, 859 F.2d

11  1396, 1400 (9th Cir.1988).

12    In this case, the ALJ committed significant errors and the evidence shows Plaintiff is

13  clearly disabled due to mental impairments.  The ALJ failed to provide legally sufficient

14  reasons to reject all the evidence from DARC.  Plaintiff sought treatment from the doctors at

15  DARC with the express purpose of rehabilitating so that she could obtain and maintain

16  employment.  Plaintiff went from earning almost $30,000 a year as a graphic artist to not

17  even being able to unsuccessfully attempting to work a sales job at a bead store.  Plaintiff's

18  inability to maintain the bead store job after rehabilitation at DARC, a clinic focused on

19  getting Plaintiff back into the workforce, is compelling to this Court.  The records from

20  DARC show doctors utilized multiple resources including counseling and psychological

21  testing to help Plaintiff alleviate some of her psychological impairments.  Ultimately,

22  doctors at DARC concluded Plaintiff's impairments were so severe that she could not

23  maintain a job and they released her from the program and recommended she complete

24  disability paperwork.  There is no further evidence the ALJ would need from the doctors at

25  DARC.  Their records and psychological testing were detailed, thorough and complete.  This

26  evidence shows the ALJ erred and it weighs heavily in finding Plaintiff is disabled.

27

28

1       The ALJ further failed to provide legally sufficient reasons to dismiss the evidence

2   from Plaintiff's ongoing treatment at CODAC.  The nurse practitioner and doctor at CODAC

3   consistently medicated Plaintiff for depression and anxiety.  Plaintiff had moments in the

4   treatment notes when she felt somewhat better and more optimistic but overall, the treatment

5   notes show Plaintiff is a depressed and anxious individual suffering from serious

6   psychological impairments that require significant and continuing medication.  After two

7   years of consistent treatment, the nurse practitioner opined Plaintiff had significant

8   impairments and was unable to work.  In her mental RFC, the nurse practitioner identified

9   five categories in which Plaintiff was markedly limited including the ability to understand,

10  remember and carry out detailed instructions and the ability to complete a normal work-day

11  and work week and perform at a consistent pace.  (AR at 54-55).  The nurse practitioner also

12  identified 10 moderate limitations.  The limitations are well-supported by other evidence in

13  the record including evidence from DARC, evidence from CODAC, Plaintiff's work history

14  and earnings and Plaintiff's own statements.  There is no further evidence the ALJ would

15  need from medical personnel at CODAC.  Their treatment notes and identification of

16  Plaintiff's mental limitations through the mental RFC assessments are detailed, thorough and

17  complete.  This evidence shows the ALJ erred and it weighs heavily in finding Plaintiff is

18  disabled.

19      Further, the record supports Plaintiff's statements that she suffers from disabling

20  impairments.  It is not necessary to remand this case back to the ALJ to reassess Plaintiff's

21  credibility.  The record is replete with support for her claims of disabling mental

22  impairments.

23      The evidence from DARC, CODAC, and Plaintiff together is compelling evidence

24  that Plaintiff is disabled due to severe mental impairments.  This evidence shows Plaintiff's

25  impairments significantly impact her ability to function and are ongoing.  The Court finds it

26  unnecessary to remand this case back to the ALJ.  The ALJ failed to provide legally

27  sufficient reasons for discounting and ignoring much of the evidence in the record and when

28

1  that evidence is considered, there are no issues that must be resolved before finding that it is

2  evidence Plaintiff is disabled.  This case should be remanded for an award of benefits.

3      As a final note, the ALJ also erred in failing to credit the opinion of Plaintiff's treating

4  physician on her physical limitations.  It is clear from the record that Plaintiff is obese and

5  has suffered consistent back pain.  The treating physician's opinion about Plaintiff's physical

6  RFC should have been analyzed and given appropriate weight.  Given Plaintiff's significant

7  mental impairments, however, it is not necessary to remand this case back to the ALJ to

8  determine Plaintiff's physical RFC.

9  **IV.  Recommendation**

10

11     For the foregoing reasons, the Magistrate Judge recommends that the District

12  Court, after its independent review:

13     1.     GRANT Plaintiff's Motion for Summary Judgment (Doc. 16) and

14  REMAND for an immediate award of benefits; and

15     2.     DENY Defendant's Motion for Summary Judgment (Doc. 19).

16     Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections

17  within 14 days after being served with a copy of this Report and Recommendation.

18  Parties should direct objections to the District Court by using the following case

19  number: CV-08-267-TUC-FRZ.

20     DATED this 4th day of April, 2011.

21

22

23

24  **CHARLES R. PYLE**
    **UNITED STATES MAGISTRATE JUDGE**

25

26

27

28